## Case No. 3,813.

### DEPOSIT SAV. ASS'N v. MAYER.

[23 Int. Rev. Rec. 241.]

Circuit Court, S. D. Alabama. Feb., 1876.

NATIONAL BANKING ACT—TAX ON CIRCULATION OF STATE BANKS—CONSTRUCTION OF STATUTE.

[1. The tax of 10 per cent., which all banks and banking associations, state and national, are required to pay "on the amount of notes of any person, or of any state bank or state banking association, used for circulation and paid out by them" (Rev. St. § 3412), applies to amounts paid out by a state bank in its own previously issued notes as well as to payments in notes of persons or other state banks.]

[2. The fact that congress, at a subsequent session, passed an act (approved February 18, 1875) imposing, in terms, upon banks, this tax upon their own notes, is not conclusive against the construction above given to the original act.]

[3. The word "issued," as used in the act placing a tax of one-twelfth of one per cent. a month on the "average amount of circulation issued by any bank," etc. (Rev. St. § 3408), means not only the making of the notes, but includes also the idea of putting them out into circulation.]

[This was an action by the Deposit Savings Association, of Mobile, against Lou. H. Mayer, collector of internal revenue, to recover taxes alleged to have been illegally collected.]

It is agreed that the following are the facts in this case, viz.: The plaintiff is an incorporated body chartered and organized under the charter granted by the general assembly of Alabama, and which may be read as a part of the facts agreed, from the acts of the legislature of Alabama (Pamph. Laws 1865–66, p. 337, No. 221), or from the original charter; that the plaintiff was engaged in the business of receiving deposits and dealing in exchange, and in the general business of banking, as authorized by said act, and that it was a bank or banker, in the sense and meaning of section 3407 of the Revised Statutes of the United States; and that while engaged in such business, and between the eleventh day of October, 1873, and the thirtieth day of November, 1873, the plaintiff issued a large amount of its papers like the following, and of the denomination of 1, 2, 3, 5, 10, 20, and 50 dollars, and that it paid them out to depositors and to others who offered other currency or valuable consideration in exchange, and that during that time such papers did circulate as money. Also that the plaintiff was assessed by J. W. Douglass, commissioner of internal revenue, $40,000 on the assessment list for the month of November, 1873, this amount being ten per centum of the amount paid out by the plaintiff between

October 11, 1873, and November 30, 1873, as alleged by said J. W. Douglass, commissioner, as aforesaid. The defendant was collector of internal revenue at Mobile, and as such, and in the discharge of his supposed duties as such collector, and under and by virtue of the assessment made by the commissioner of internal revenue, did issue his warrant of distraint against the plaintiff, and did seize the sum of $6,725.50, and certain real and personal property which is not covered by the suit, and the defendant did deposit the said $6,725.50 into the treasury of the United States. This distraint and seizure was made under section 3187 of the Revised Statutes of the United States. It is further agreed that the plaintiff duly made his appeal to the commissioner of the internal revenue, according to the provisions of law in that regard, and the regulations of the secretary of the treasury established in pursuance thereof, to remit, refund and pay back said sum as erroneously or illegally assessed or as wrongfully collected, and that the decision of commissioner has been had therein as provided in section 3226 of the Revised Statutes of the United States, and that the decision of said commissioner was adverse to the plaintiff. Upon these facts the plaintiff insists that as a matter of law it was not subject to said tax of ten per cent. on its own issues as aforesaid thus claimed, and that such demand, seizure, and conversion of its money was unauthorized by law, and was erroneous and wrong. The defendant asserts the contrary proposition, and it is this question of law which is submitted for consideration and adjudication.

Henderson & Smith, for plaintiff.
Geo. M. Duskin, U. S. Atty.

OPINION OF THE COURT. The facts of the case appear in the agreed statement of the fact on file with the papers. The question here is the proper construction of the 6th section of the act of March 3, 1865 [13 Stat. 484], as amended by the act of July 31, 1866, and embodied in section 3412 of the Revised Statutes of the United States. This section of the act is in the following words: "Every national banking association, state bank, or state banking association, shall pay a tax of ten per centum on the amount of notes of any person, or of any state bank or state banking association used for circulation, and paid out by them." It is claimed that under this section of the law, the plaintiff, a state banking association, is not liable to pay this tax per centum on the amount of its own notes issued by it, but only upon the notes of persons or of banking associations other than its own, used for circulation and paid out by it. Thus, a tax upon notes used for circulation, and by the terms of the statute, is placed upon the amount of the notes of any person, or state bank, or state banking association, used for circulation and paid out by it. But it is claimed this does not apply to the bank's own notes or its own issue, and the issue of a bank—that is, its own notes—is a different thing from the notes of other banks which it may use and pay over its counter for circulation.

It will be observed that the word "issue" or "issued" is not used in section 3412 of the Revised Statutes under consideration. It is used, however, in a previous section of the same chapter 8, on banks and bankers, and in section 3408, Rev. St., it is provided. "There shall be levied, collected and paid among other taxes," third, "a tax of one-twelfth of one per centum each month upon the average amount of circulation issued by any bank association, corporation," etc. This, then, is a tax upon the circulation issued by a bank, and the next inquiry is, what is meant by the use of the word "issue"? It means that the bank has given origin and existence to the paper or notes, but it means more than the mere making, printing and signing of the notes, for this may all be done, and still the notes remain in the vaults of the bank, and never be put out. "Issued," then, means not only the making of the notes, but includes also the idea of putting them out into circulation, and this is to what the tax of one-twelfth of one per centum provided for in 3d subdivision of section 3408 applies. Nor does the subsequent section, the one under consideration, apply to the same thing, that it, is the ten per cent. tax to be cumulative upon the tax which we have seen is placed upon the issue of a bank. It would require very clear words to force me to the conclusion that such was the intention of congress, and I think these two provisions can be harmonized upon another view of the subject. We have seen that the word "issue" or "issued" is not used in section 3412, which imposes the ten per centum tax; that tax is, by the terms of the section, imposed upon the amount of the notes used for circulation. It does not deal with the question of issue at all; it presupposes the issue and existence of the notes, and imposes the tax of ten per centum on any bank that uses them for circulation.

The question is not who issued these notes and put them into circulation, nor is it as to the conditions of their issue, but the notes being in circulation, no matter from what source, every bank that uses them for circulation and pays them out is liable to the tax of ten per cent. on the amount so used and paid out. But it is said that subsequent passing out by a bank of its own notes is a re-issue, and not a passing out within the meaning of the statute; but will any one say, that a re-issue is the same thing as an original issue. which gives life and existence to the notes, or is there any pretence that the tax imposed by the statute, upon the issue by any bank, is also imposed upon the

re-issue or upon the paying out of its own notes? Certainly not, and I therefore conclude that a re-issue of notes already in circulation is simply another name for paying them out. The statute evidently intended to restrain the use of such notes, and because a bank originally issued the notes, which at subsequent times it repeatedly pays over its counter, does it not as fully come within the spirit and meaning of the statute as if it paid out notes other than its own? Its notes belong to the classes which the statute places under the ban, as well as the notes of other similar associations, and if relieved from the tax because it pays out its own notes, all that would be required to avoid the statute would be for each bank to swap currency every night, and pay out its own next day.

The congress of the United States, in the organization of our present system of banking and currency, has undertaken to provide a currency for the whole country. Its constitutional right to do this scarcely admits of question at this day. It follows that it has a right to protect that currency, and by so doing, protect the people from a vicious and unsound currency. The law was intended to remedy a supposed evil, and promote the public good; it is to be construed to effectuate the purpose and object of its enactment. It is said because that this plaintiff derived its right to issue these notes from the state of Alabama, and that if this construction of the law is correct, it would render the right or franchise so derived worthless, and the suggestion is made that the construction of the statute, contended for by the plaintiff, leaves a field and scope for its operation, and does not trench upon what is alleged to be dangerous ground, to wit, the reserved rights of the states. I trust that I am able to appreciate the force of that argument, but will not enter upon it, for I think that whole question, at least so far as the points involved in this case are concerned, has been fully settled in the case of Veazie Bank v. Fenlo (by the supreme court of the United States) 8 Wall. [75 U. S.] 533. In reply to that, it is said, that the constitutional question only was before the court, and that the question on the construction of the statute, as now made, was not before the court.

This question upon the construction of the statute does not seem to have been specifically presented, but the court assumed a construction as wide if not wider than that which I have given it. In the Case of Cliquot's Champagne, 3 Wall. [70 U. S.] 144, a tacit recognition is equivalent to an express declaration. The fact that congress at subsequent sessions sought to pass and did ultimately pass an act approved February 8, 1875, which imposed in terms upon the banks this tax of ten per cent. upon their own notes used for circulation, is not conclusive against the construction given. This might seem to be regarded as going to show the intention of congress in the first instance. Certainly the question admitted of doubt, and it was proper to free it from that doubt. The jury is instructed that under this agreed state of facts in this case defendant is entitled to a verdict.